UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | |
| Frank A. Santilli and Monica D. Santilli; and Santilli Law Group, Ltd. | ) ) | (Jointly Administered) |
| Debtor. | ) ) | Case No. 16 B 14713 |
| | ) | |
| Deborah K. Ebner, as Chapter 7 Trustee for the Bankruptcy Estate of Santilli Law Group, Ltd. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Adv. No. 17 A 293 |
| Alfred Vano, | ) ) | |
| Defendant. | ) ) ) | Honorable Jacqueline P. Cox |

## MEMORANDUM OPINION

The Plaintiff, Deborah Ebner, as Chapter 7 Trustee for the bankruptcy estate of Santilli Law Group, Ltd. ("SLG") filed a civil complaint in the Northern District of Illinois alleging that the Defendant, Alfred Vano ("Mr. Vano") converted legal fees and costs that were rightfully owed to the Santilli Law Group. The Honorable Judge Tharp entered an agreed order granting defendant's motion to transfer the case to Bankruptcy Court.[1]

### JURISDICTION

This Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue in this court is appropriate pursuant to 28 U.S.C. § 1409(a). This matter is a

---

[1] *See* Docket Entry 17 for case 1:16-cv-11308; entered February 8, 2017.

core proceeding regarding which this court has authority to enter a final judgment. 28 U.S.C. § 157(b)(2)(E) – orders to turn over property of the estate.

## BACKGROUND

After the Plaintiff's complaint, Defendant's answer, and the entry of initial and amended pre-trial orders, this matter proceeded to trial over three days including May 3, 4, and 8, 2018. The Defendant was barred from presenting any evidence or testimony corroborating exhibits for failure to file exhibits in accordance with the court's March 8, 2018 Amended Pre-Trial Order. Adv. Dkt. No. 56.

A separate but related issue in this adversary concerns Mr. Vano's $1,000.00 sanction for non-compliance with this court's order that he deposit $340,275.00 from his IOLTA into an escrow account at Northern Trust Bank. Adv. Dkt. No. 14. The prove-up hearing for sanctions was entered and continued to be heard with this trial. Based on the pleadings, the evidence submitted at trial, counsels' arguments, and for the reasons set forth in this opinion, this court finds Defendant, Mr. Vano, liable for conversion on the civil complaint; the Motion to Compel will be granted.

## FACTS

This adversary involves a dispute over the proper allocation of attorney's fees and costs between SLG and Mr. Vano. The Plaintiff, Deborah Ebner as Chapter 7 Trustee stands in the shoes of Mr. Santilli and/or SLG's as she seeks recovery of funds that would benefit their bankruptcy estates. *See* Bankruptcy Code 11 U.S.C. § 541(c)(1). Hence, references to Mr. Santilli or SLG are attributable to Deborah Ebner, as Chapter 7 Trustee.

Mr. Santilli is the former owner of SLG, a law firm that specialized in representing plaintiffs in personal injury and wrongful death cases as well as worker's compensation matters.

2

For all times relevant to this adversary, Mr. Vano was an employee of SLG and was never a shareholder or partner. Adv. Dkt. No. 41, Agreed Joint Stipulated Facts ("AJSF"), p. 1, ¶ 4. Mr. Vano was assigned to work on pre-litigation cases as well as matters that proceeded to litigation. *Id.* p. 2, ¶ 3.

Mr. Santilli testified that around 2013 going into 2014 that SLG's business was definitely heading in a downward spiral. Trial Transcript ("Tr. Transcript") Vol. II, p. 199. Mr. Santilli further stated that in May 2014, he had a meeting with Mr. Vano and the firm's accountant where it was decided that because of reduced revenues, Mr. Vano would receive $3,600.00 every two weeks instead of a set percentage based on cases settled by the litigation department. Tr. Transcript Vol. II, p. 199 - 200. Mr. Vano's recollection of the May 2014 meeting was that he agreed with Mr. Santilli's request to defer his 50% fee until a big case came in so that Mr. Santilli could get past his financial difficulties relative to running the business. Tr. Transcript Vol. II, p. 330. Neither party produced documentation to support their assertions.

The competing conclusions concerning Mr. Vano's compensation set the stage for a dispute over legal fees and costs from Nita Anthony's wrongful death lawsuit stemming from the deadly 2003 stampede at Chicago's E2 night club. AJSF, p. 2, ¶¶ 7 - 10. ("E2" references Ms. Anthony's lawsuit and related settlement proceedings.) Nita Anthony was survived by four children including D'Artagnan Christopher Anthony (DC), Bryanna Lee, Demetrius May, Jr., and Tyara May. *Id,* ¶ 12.

The law firm Anesi, Osman, Rodin, Novak & Kohen Ltd. ("Anesi") represented Demetrius and Tyara through their Administrator and father, Demetrius May, Sr. SLG represented DC and Bryanna through their Administrator and grandmother, Jessie Anthony. AJSF, p. 2, ¶¶13 - 14. Jessie Anthony signed an attorney-retention agreement on February 18,

3

2003 that allowed SLG a fee of one-third of the gross settlement plus costs. Plaintiff's Exhibit No. 1. Mr. Vano did not contribute any of the costs paid by SLG. AJSF, p. 2, ¶ 16. Mr. Vano's understanding of the E2 fee split was that he and SLG would split attorney's fees 47.5% each with the remaining 5% going to Mr. Javors, an attorney who worked on the case prior to Mr. Vano joining the firm. Tr. Transcript Vol. II, p. 325. Mr. Santilli disputed that any agreement was reached with respect to fee splits for E2 proceeds. Tr. Transcript Vol. II, p. 257.

Demetrius May, Sr. and Jessie Anthony were appointed as Independent Co-Administrators when their cases were consolidated. AJSF, p.2, ¶ 11. Mr. Santilli recalled the case settling in September 2014 because around that time the firm needed the money and Mr. Vano purchased a plaque acknowledging the E2 settlement. Plaintiff's Exhibit No. 4; Tr. Transcript Vol. II, p. 208. Rachel Kiley, Defendant's counsel in the E2 case, testified that their procedure is that no settlement checks will be issued in cases involving minors until all releases are signed, the release of attorney's lien is signed, and a law division judge approves the settlement. The probate court has to approve the settlement too. Tr. Transcript Vol. I, pp. 13 - 14.

On March 3, 2015, Judge Flanagan entered a Wrongful Death Settlement and Dismissal Order in the E2 case approving a $2,000,000.00 settlement plus an additional $100,000.00 from a Dram Shop Fund which was to be split equally between the Co-Administrators' estates. Plaintiff's Trial Exhibit Nos. 10A - 10D. The March 3, 2015 Order states that $331,480.73 was payable to each of Nita Anthony's children and that that reflected the net proceeds due each of the Heirs. *Id.* It also says that the amount distributable, based on dependency, was to be accounted for and administered in the Probate Division. *See* Plaintiff's Exhibit No. 10D. Mr. Vano probated Bryanna Lee's estate in Cook County; DC's estate was probated in McLean

County. AJSF, p. 4, ¶ 39 - 40. After Judge Flanagan's March 3, 2015 order was entered, Mr. Vano filed a petition to approve disbursals that authorized all settlement proceeds from Bryanna Lee's case to be deposited in an account at Fifth Third Bank. Plaintiff's Exhibit No. 18B. This account (ending in 4502) was Mr. Vano's personal IOLTA. Tr. Transcript Vol. 1, p. 115. Mr. Vano testified that he agreed with the statement concerning the petition to approve disbursals that "despite this document, a third of whatever gross amounts that were going to be disbursed to Bryanna Lee were SLG fees." Tr. Transcript Vol. I, p. 123.

In October, 2014, Mr. Vano engaged the Golan Christie law firm ("Golan") to create a special needs trust for (commonly referred to as an OBRA trust) for DC. Plaintiff's Exhibit No. 7A. Through May 26, 2015, Mr. Vano had not paid Golan. Plaintiff's Exhibit No. 7D.

On March 18, 2015, Judge O'Malley (Probate Division of Circuit Court of Cook County) entered an order distributing the $1,000,000.00 settlement, approving $333,333.32 in attorneys' fees and $4,067.44 in costs to SLG. Plaintiff's Trial Exhibit Nos. 11A and 11B.

Mr. Vano retrieved the $1,000,000.00 check on March 20, 2015 and had Jessie Anthony endorse the check to him. Plaintiff's Exhibit Nos. 14 and 17A. That same day Mr. Vano deposited the $1,000,000.00 check into his personal IOLTA. AJSF, p. 4.

Mr. Vano also testified that he told Mr. Santilli he picked up the check and he was keeping it because he was afraid Mr. Santilli was going to steal the money based on his financial problems and habit of stealing money from other clients. Tr. Transcript Vol. I, p. 166. Mr. Vano testified that did not report Mr. Santilli's wrongdoing to the ARDC. Tr. Transcript Vol. II, p. 423.

Mr. Vano testified that Mr. Santilli asked where the E2 money was at one point, but that he did not ask about the money after the check was deposited. Tr. Transcript Vol. I, p. 165-166.

On May 29, 2015, the Anesi firm issued Mr. Vano a $19,734.47 check payable to SLG for the fees and costs pursuant to their share of Dram Shop fund proceeds; Mr. Vano deposited the check into his IOLTA. AJSF, p. 4.

With respect to Bryanna Lee, Cook County Judge Karen O'Malley entered a March 18, 2015 order stating that vouchers be presented on May 19, 2015 showing, inter alia, that SLG received $333,333.32 in attorney's fees and $4067.44[2] for reimbursement of their costs. Plaintiff's Exhibit No. 11B. On October 22, 2015, Mr. Vano filed a signed voucher in Cook County Probate Court stating that "Pursuant to Court Order dated March 18, 2015, the undersigned acknowledges receipt of a check payable to Santilli Law Group, Ltd. in the amount of $333,333.32." Plaintiff's Exhibit No. 40. Mr. Vano testified that he understood that acknowledgment of the voucher meant receipt of the check, not receipt of the funds. Tr. Transcript, Vol. II, p. 392.

As for DC, McLean County Circuit Judge Simmons-Foley entered a September 3, 2015 order requiring Mr. Vano to present vouchers on September 17, 2015 reflecting, inter alia, $166,666.66 in attorney's fees payable to Mr. Vano; $8,333.33 in attorney's fees payable to Mr. Vano; $3,567.62 in approved costs payable to SLG; $1,947.00 in approved costs for a bond payable to SLG; $1,431.24 for the cost of creating the OBRA Trust; and $342,790.43 payable to Jessie Anthony as Trustee of the OBRA 93 Trust. Plaintiff's Exhibits Nos. 26A – 26C.

On September 17, 2015 Mr. Vano presented two vouchers for attorney's fees including a cashier's check of $146,932.19 payable to himself from his IOLTA and a $19,734.47 check payable to SLG from Anesi representing SLG's share of the Dram Shop proceeds and costs, totaling $166,666.66. Plaintiff's Exhibits Nos. 28 and 29. Judge Simmons-Foley accepted all

---

[2] Judge O'Malley's March 18th Order was later changed nunc pro tunc to show that the $2874.23 in costs originally granted to SLG should have been granted to Anesi. *See* Tr. Transcript Vol. I, p. 108.

6

of Mr. Vano's vouchers and authorized the aforementioned disbursements from Mr. Vano's IOLTA pursuant to the court's September 3, 2015 Order. Plaintiff's Exhibit No. 27A. On December 22, 2015 Mr. Vano deposited $330,265.51[3] into a new IOLTA (account ending 4284) at Fifth Third Bank. Plaintiff's Exhibit No. 41.

On January 22, 2016 Mr. Santilli's attorney informed him that he had been suspended him from the practice of law for five months. Tr. Transcript Vol. II, p. 226 - 227. Mr. Santilli then went to a bar by himself where he drank heavily. *Id.* at 228 - 229. Later that day Mr. Vano joined him at the bar. *Id.* at 230. Mr. Santilli testified that he agreed with Mr. Vano that everyone should continue to work at the firm to bring in money so that he could return to take over the firm. *Id.* at 232. Mr. Vano claims that he created an agreement dated January 19, 2016 signed by him and Mr. Santilli although there is no signature line for Mr. Vano. Plaintiff's Exhibit Nos. 47A and 47B. The agreement explains that because of Mr. Santilli's recent financial difficulties and inability to honor contractual obligations (50% of fees for pre-litigation and litigation cases) owed to Mr. Vano, Mr. Santilli authorizes, permits, and directs Mr. Vano to deposit all E2 litigation funds in his personal IOLTA in order to pay debts owed to Mr. Vano. *Id.* The agreement also grants Mr. Vano a power of attorney to deposit settlement checks in his IOLTA; it allows Mr. Santilli to transfer representation of all pending pre-litigation matters to Mr. Vano and states that Mr. Santilli waived any and all lien rights and releases. *Id.*

Mr. Santilli testified that in March 2016 he reached out to a friend and inquired why it was taking so long for settlement proceeds to disburse. He was informed that the case had settled and that Mr. Vano had the money. Tr. Transcript Vol. II. p. 224. Mr. Santilli fired Mr. Vano on March 8, 2016. *Id.* at 318. Mr. Santilli also filed a police report regarding this problem in March 2016 and reported this information to the ARDC. *Id.* at 244.

---

[3] Four deposits including one check for 146,932.19; another for $166,666.66; and two checks for $8,333.33.

7

## CONVERSION

The essence of an action for conversion is the wrongful deprivation of property from the person entitled to its possession. *In re Rosin*, 156 Ill. 2d 202, 206, 620 N.E.2d 368, 370 (1993) (internal citations omitted). The Plaintiff's cause of action was timely filed within the 5-year statute of limitations since Mr. Vano began depositing E2 settlement checks in March 20, 2015. The Plaintiff filed the original action on December 13, 2016. *See* 735 ILCS 5/13-205.

Illinois courts do not recognize an action for conversion of intangible rights. *Great Lakes Higher Educ. Corp. v. Austin Bank of Chicago*, 837 F.Supp. 892, 897 (1993) (citing *In re Oxford Marketing, Ltd.*, 444 F.Supp. 399, 404 (N.D.Ill.1978)). However, Illinois courts do recognize a cause of action for conversion of commercial paper, such as a check, on the theory that the intangible right is merged into the specific document. *Id.* The property at issue in this case are negotiable instruments (E2 settlement checks for attorney's fees and costs) that Mr. Vano deposited in his IOLTA. The Plaintiff's cause of action for conversion of the E2 settlement checks is permissible under Illinois law.

To make out a claim for conversion the plaintiff must prove the following elements by a preponderance of the evidence: (1) defendant's unauthorized and wrongful assumption of control, dominion, or ownership over plaintiff's personal property, (2) the plaintiff's right in the property, (3) the plaintiff's right to immediate possession of property, absolutely and unconditionally, and (4) plaintiff's demand for possession of the property. *Bill Marek's The Competitive Edge, Inc. v. Mickelson Grp., Inc.*, 346 Ill. App. 3d 996, 1003 (2004) (internal citations omitted).

The first element involves Mr. Vano's unauthorized and wrongful assumption of control, dominion, and ownership over Plaintiff's personal property. As the lead attorney handling the

E2 case, Mr. Vano was authorized to negotiate a settlement on behalf of Jessie Anthony and to receive settlement checks as an employee of SLG. However, Mr. Vano produced no credible evidence that Mr. Santilli or SLG authorized him to deposit the E2 settlement proceeds into his personal IOLTA. Mr. Vano did not inform Mr. Santilli about the receipt of the $1,000,000.00 until a year later in 2016.

The SLG's rights in the property originated in the Attorney's Retention Agreement Jessie Anthony signed that specifically provides SLG with 33 1/3% of the gross settlement proceeds plus costs. That agreement was never modified in favor of Mr. Vano. Mr. Vano conceded as much when he stated that he knew a third of the gross amounts were SLG's fees despite his petition to approve disbursals that called for the funds to be deposited in his IOLTA.

Moreover, this court is not persuaded that the January 19, 2016 agreement is valid or established Mr. Vano's rights to the E2 fees and costs. The January 19 date on the agreement is curious because Mr. Santilli learned around that date that he had been suspended from the practice of law for five months. The court is not persuaded that Mr. Santilli would voluntarily forego all of the E2 legal fees and costs. This is especially true given SLG's financial pressures as early as May 2014. Recall that Mr. Vano also created a new IOLTA in December 2015. The facts, taken together indicate that Mr. Vano intended to keep all of the E2 fees and costs; he created the January 19, 2016 agreement long after he received the funds to explain and justify why he was in possession of them.

Defendant's counsel in the E2 case explained that no settlement checks would be issued in cases involving minors until the law division approved the settlement and the probate court approved their distribution of the funds. In the E2 case, the Law Division approved the E2 settlement and awarded fees and costs to SLG and the Probate Division approved fees and costs

to go to SLG. It was only after these orders were entered along with Mr. Vano releasing SLG's attorney's lien, that Defendant's counsel informed Anesi and SLG that the settlement checks were ready for pick up on March 19, 2015. It is clear from the evidence that SLG's right to possession became immediate, effective March 19, 2015.

The Plaintiff has demonstrated that Santilli made a demand for the property. The Defendant's counsel in the E2 case testified that Mr. Vano told her to leave SLG's name off the draft to facilitate the creation of a special needs trust for DC. Tr. Transcript Vol. I, pp. 36-37. Despite this request, Mr. Vano testified that Mr. Santilli asked where the E2 money was but that Mr. Santilli never asked about the money once the check was deposited. However, Mr. Vano also testified that he told Mr. Santilli on March 20, 2015 that he picked up the check and deposited it in his own IOLTA. The court does not find that testimony persuasive. As of May 2014, SLG was facing financial difficulties regardless of any changes in how Mr. Vano was paid. That Mr. Santilli would not make any demands on settlement proceeds he knew were in his employee's IOLTA is preposterous. This is also supported by Mr. Vano's firing in March 2016, which coincides with Mr. Santilli's credible testimony that he first learned that month that Mr. Vano had already received and deposited the E2 settlement proceeds. Mr. Vano provides no reasonable justification why Mr. Santilli would wait until March 2016 to fire him if he knew the proceeds were in Mr. Vano's possession in 2015. Mr. Santilli knew that the case settled in 2014 so he had every incentive to ask Mr. Vano when the settlement checks would be received.

## CONCLUSION

The Plaintiff has met her burden of proving the elements of conversion against Mr. Vano by a preponderance of evidence.

The Motion to Compel is granted; the Judgment Order will dispose of it.

Judgment will be entered herein by separate order.

There will be a status hearing for compliance July 11, 2018 at 10:00 AM.

**Dated: June 15, 2018**	**ENTERED:**

*[signature: Jacqueline P. Cox]*

**Jacqueline P. Cox**
**United States Bankruptcy Judge**